## Commonwealth v. Glunz et al.

*Robert M. Harris* and *C. J. Friedberg*, for Commonwealth.

*Isadore E. Krasno*, for defendants.

DALTON, J., March 21, 1955.—The indictment charges that "the said Bernard Glunz, Paul O'Connor and Edward Carroll, then and there being officers and the said Joseph McShaw and Nicholas Mammarella, then and there being agents, servants or employes of the Mt. Hope Sportsmen's Club, Licensee, unlawfully and wilfully did sell certain liquor and malt or brewed beverages to A. E. Adam and Robert B. DeGodt, who were not bona fide members of said club . . .".

The prosecution was brought under section 406 of the Liquor Code of April 12, 1951, P. L. 90, 47 PS §4-406, which provides in part as follows:

"No club licensee nor its officers, servants, agents or employes, other than one holding a catering license, shall sell any liquor or malt or brewed beverages to any person except a member of the club."

Defendants have moved to quash the indictment for the reason, inter alia, that the indictment does not allege that the licensee was the holder of a club license.

The Liquor Code regulates a number of different types of licenses. In particular, it specially distinguishes three types of retail liquor licenses, which it expressly declares "shall be known as hotel liquor licenses, restaurant liquor licenses and club liquor licenses, respectively": Section 401(*a*), 47 PS §4-401(*a*). The offense of selling to nonmembers, under section 406, is one which can be committed only by the holder of a club license or by an officer, servant, agent or employe of the holder of a club license.

In Commonwealth v. Neal, 78 Pa. Superior Ct. 216, 221, it was said:

"When the effect of the statute is to create an artificial and arbitrary offense, only becoming such when it is executed by persons of a particular class, the indictment must show the defendant to be within this class: Com. v. Shelly, 2 Kulp 300; Sadler's Criminal Law, 261."

In our own case of Commonwealth v. Anderson, 78 D. & C. 68, 47 Schuyl. 151, we quoted from 42 C. J. S., Indictments and Informations, §127(*g*) as follows:

" 'If the offense may be or is committed by persons only of a certain class or description, the accused must be described as being of that class or description'."

It does not necessarily follow from the fact that the indictment describes defendants as officers, agents, servants or employes of a "club", which in turn is baldly described as a "licensee", that the club is a holder of a club license as that term is used in the Liquor Code. Under the code a club license is an inexpensive and limited type of retail license which is available only to those clubs who can qualify as a "club" within the definition of that term as contained in section 102 of the act, 47 PS §1-102. However, we find nothing in the Liquor Code which would bar a club, at least one which is not incorporated, from obtaining a hotel liquor license or a restaurant liquor license. It is not entirely unheard of or unprecedented for a club to conduct a public hotel or a public restaurant in conjunction with its activities. While such a club probably could not qualify for a club license under the code, because of the pecuniary profit involved, it might well qualify as an "association" for a hotel or restaurant license. See Application of Monaca Aerie 1412, 18 D. & C. 484, where the court directed the issuance of a retail "eating place" license to a club which could not qualify for a club license under the Beverage License Law of May 3, 1933, P. L. 252. A club holding a hotel or restaurant license could

330

freely sell to nonmembers, because it would not be a club licensee within the meaning of the code.

Since the indictment does not allege that the licensee is the holder of a club license, we are of opinion that it is fatally defective.

And now, March 21, 1955, the indictment is quashed.